UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| City of Stuart, Florida<br><br>Plaintiffs,<br><br>v.<br><br>The 3M Company (f/k/a Minnesota Mining and Manufacturing Co.); Tyco Fire Products LP, successor-in-interest to The Ansul Company; Buckeye Fire Equipment Company; Chemguard; and National Foam, Inc.,<br><br>Defendants. | Case No.<br><br><br>**COMPLAINT**<br>**AND**<br>**JURY DEMAND** |

Plaintiff City of Stuart, Florida ("Stuart" or "Plaintiff"), by and through its attorneys, Weitz & Luxenberg, P.C. and Morgan & Morgan, P.A., as and for its complaint against defendants, The 3M Company (f/k/a Minnesota Mining and Manufacturing Co.), Tyco Fire Products LP, successor-in-interest to The Ansul Company, Buckeye Fire Equipment Company, Chemguard, and National Foam, Inc. (collectively, "Defendants"), alleges as follows:

## I. INTRODUCTION

1.     Plaintiff City of Stuart owns and operates a public drinking water system and supplies drinking water to thousands of residents and businesses that depend on the City of Stuart for their water needs.  Plaintiff seeks to recover by this action the substantial costs necessary to protect the public and restore certain of its water supply wells, which are contaminated by the toxic chemicals perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA").

2.     PFOS and PFOA are highly toxic and carcinogenic chemicals that are or were components of Aqueous Film Forming Foam ("AFFF"), a firefighting suppressant agent used by the Stuart Fire Rescue, before PFOS- and PFOA-based AFFF was taken off the market.

3.     In years past, PFOS- and PFOA-based AFFF was used in training and firefighting activities and thereby released and discharged into the environment.  The PFOS and PFOA in the AFFF have migrated through the subsurface and into the groundwater, and now contaminate the water in Plaintiff's drinking water wells.

4.     The defendants in this action are the manufacturers and distributors of the AFFF that contaminated Plaintiff's wells.  The Defendants manufactured AFFF that contained "fluorocarbon surfactants," believed to include PFOS, PFOA, and/or certain other perfluorinated compounds ("PFCs") that degrade into PFOS or PFOA.  (PFOS, PFOA and the PFCs that degrade into PFOS or PFOA are hereinafter referred to as "Toxic Surfactants.")

5.     Among other things, the manufacturer defendants knowingly and willfully manufactured, promoted, and sold PFOS- and PFOA-based AFFF when they knew or reasonably should have known that this harmful compound would reach groundwater, pollute drinking water supplies, render drinking water unusable and/or unsafe, and threaten public health and welfare, as it has done with respect to Plaintiff's water supply.

6.     Plaintiff brings this lawsuit to recover compensatory and punitive damages, including all necessary funds to compensate Plaintiff for the costs of designing, constructing, installing, operating and maintaining the treatment facilities and equipment to remove PFOS and PFOA from its water supply, and to ensure that the responsible parties bear such expense, rather than Plaintiff, its tax-payers and its ratepayers.

## II. PARTIES

**Plaintiff**

7.      Plaintiff City of Stuart is an incorporated municipality of the State of Florida, with its municipal offices located at 121 SW Flagler Ave Stuart, FL 34994.

8.      Stuart, known as the "Sailfish Capital of the World", is home to more than 17,000 residents as well as businesses, and hosts a thriving tourism industry.

**Defendants**

9.      Defendant The 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business at 3M Center, St. Paul, Minnesota 55133.

10.     According to 3M, 3M was the only known manufacturer of PFOS and PFOS precursors in the United States.

11.     3M also manufactured PFOA.

12.     Through at least 2002, 3M commercially manufactured PFOS for AFFF and it manufactured AFFF that contained fluorocarbon surfactants according to its own formula.

13.     Defendant Tyco Fire Products LP (hereinafter "Tyco") is a Delaware corporation, having a principal place of business at 1400 Pennbrook Parkway, Lansdale, PA  19446..

14.     Tyco manufactures the Ansul brand of products and AFFF, and upon information and belief, is the successor-in-interest to the corporation formerly known as The Ansul Company (hereinafter "Ansul").

15.     At all times relevant, Tyco and/or Ansul commercially manufactured fire suppression products, including AFFF that contained fluorocarbon surfactants.

16.     Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation, with its principal place of business at 110 Kings Road, Kings Mountain, NC  28086.

17.     At all times relevant, Buckeye commercially manufactured fire suppression products, including AFFF that contained fluorocarbon surfactants.

18.     Chemguard is a Texas corporation, having a principal place of business at One Stanton Street, Marinette, WI 54143.

19.     At all times relevant, Chemguard commercially manufactured fire suppression products, including AFFF that contained fluorocarbon surfactants.

20.     National Foam, Inc. ("National Foam") is a Delaware corporation, having a principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382.

21.     At all times relevant, National Foam commercially manufactured fire suppression products, including AFFF that contained fluorocarbon surfactants.

22.     National Foam and its predecessors have also used the "Angus Fire" trade name and brand name for sales of AFFF in the United States for a number of decades.  References to "National Foam" herein shall also refer to AFFF commercially manufactured, marketed and sold under the "Angus" name and "Angus Fire" brand.

### III.    JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 inasmuch as the Plaintiff and all the Defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

24.     This Court has personal jurisdiction over Defendants by virtue of each Defendant's regular and systematic contacts with the State of Florida, including, among other things, each Defendant's marketing, sale and/or distribution of AFFF within the State of Florida.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) inasmuch as a substantial part of the events or omissions giving rise to the claims herein occurred in this district and because the property that is the subject of this action is situated within this district.

## IV. GENERAL FACTUAL ALLEGATIONS

**Background Regarding PFOS and PFOA**

26.     PFCs are manmade chemicals that do not exist in nature.

27.     There are numerous chemicals in the PFC family, two of which are PFOS and PFOA.

28.     PFOS and PFOA have also been widely used in industry and in commercial products due to their quality to repel water, dirt, oil, and grease.

29.     Companies also used PFOS, PFOA and other Toxic Surfactants specifically to commercially make AFFF.

30.     PFOS and PFOA have unique properties that make them persistent, bioaccumulative, and toxic.

31.     First, PFOS and PFOA can persist in the environment.

32.     Due to the strength of multiple carbon-fluorine bonds, PFOS and PFOA break down very slowly in the environment, if at all.

33.     PFOS and PFOA are thermally, chemically, and biologically stable and resistant to biodegradation, atmospheric photooxidation, direct photolysis, and hydrolysis.

34.     PFOS and PFOA are also water soluble, making them mobile in groundwater and the environment, and because they repel organic materials, they readily leach through soil impacting groundwater.

35.     Typical municipal water treatment plants did not and do not filter PFOS and PFOA from contaminated water due to the chemicals' physical and chemical properties.

36.     Similarly, chlorine and other disinfectants that are typically added to municipal drinking water systems did not and do not remove PFOS or PFOA from contaminated water.

37.     Second, PFOS and PFOA are bioaccumulative.

38.     Toxicology studies show that PFOS and PFOA are readily absorbed after oral exposure and accumulate primarily in the serum, kidney, and liver.

39.     PFOS and PFOA have a half-life within the human body of 2 to 9 years.

40.     PFOS and PFOA can bioaccumulate up the food chain; can cross the placenta from mother to fetus; and can be passed to infants through breast milk.

41.     Third, PFOS and PFOA are toxic.

42.     There are a number of health risks associated with exposure to PFOS and PFOA, and these risks are present even when PFOS and PFOA are ingested at seemingly low levels.

43.     PFOS and PFOA exposure is associated with, among other injuries, increased risk in humans of testicular cancer and kidney cancer, disorders such as thyroid disease, high cholesterol, ulcerative colitis, and pregnancy-induced hypertension, as well as other conditions.

44.     Injuries occur months or years after exposure to PFOS and/or PFOA.

**PFCs in AFFF**

45.     AFFF is a Class-B firefighting foam.  AFFF concentrate is mixed with water and air that may be used to extinguish Class B fires.

46.     In the field, firefighting personnel use specially designed equipment to mix a small amount of AFFF concentrate with water and air.  The resulting foam forms a blanket over

6

combustible liquids, which helps to suppress the flames, cool the liquids, and limit vapor production and re-ignition.

47.     AFFF containing PFCs was developed in the 1960s as an alternative to existing firefighting foams, and quickly became the primary firefighting foam used in the U.S.

48.     One of the key differences between the AFFF developed in the 1960s and the prior firefighting foams was the inclusion of a fluorocarbon surfactant.

49.     There are numerous fluorocarbon surfactants, and the Defendants had the choice to manufacture their AFFF with a formula that did not include PFOS, PFOA or another Toxic Surfactant.

50.     For example, upon information and belief, each of the Defendants, except for 3M, which no longer manufactures AFFF, manufacture AFFF today without PFOS, PFOA or another Toxic Surfactant.

51.     Upon information and belief, Defendants had the ability during all relevant times to manufacture AFFF without PFOS, PFOA or another Toxic Surfactant.

52.     Nonetheless, despite their options and their knowledge of the dangers that PFOS and PFOA posed to human health and the environment, upon information and belief, Defendants manufactured AFFF that contained PFOS, PFOA or another Toxic Surfactant.

53.     Defendants knew or should have known that the products they manufactured and sold were harmful to human health and the environment.

54.     Despite their superior knowledge, the Defendants did not timely inform those that used their AFFF of the dangers to human health and the environment.

**The contamination of the Surficial Aquifer**

55.     The City of Stuart prides itself on providing its residents and businesses with outstanding drinking water of the highest quality, purity and taste.

56.     The City of Stuart obtains its drinking water supply from the Surficial Aquifer, which underlies the City of Stuart.

57.     To access the Surficial Aquifer, the City of Stuart relies on a system of 30 interconnected groundwater wells, which transmit raw water to a central Water Treatment Facility.

58.     There, the water is aerated, lime softened, settled, filtered, disinfected, and pumped through water distribution mains and service lines into approximately 4,000 residential and 500 commercial connections.

59.     Although the Water Treatment Facility contains various technologies to ensure high quality water, it does not contain the specialized filtration technology required to remove PFOS and PFOA from a water supply.

60.     Stuart has the ability to pump its wells at varying levels, and to shut off wells if they show an unacceptable level of contaminants.

61.     Regardless of how many wells it pumps at any given time, however, Stuart must still provide, on an average, 3.5 million gallons of water a day to its residents and businesses.

62.     The Stuart Fire Rescue takes similar pride in its service to the community.

63.     The Stuart Fire Rescue is committed to proving the residents of Stuart with the highest level of safety and protection.

64.     To accomplish its mission, the Stuart Fire Rescue provides its emergency personnel with extensive education and training on the latest firefighting technology and procedures, including on the use of AFFF.

65.     For example, Stuart Fire Rescue purchased the Defendants' AFFF, trained its personnel in the use of AFFF, and routinely practiced applying AFFF so that its personnel would be ready to respond in an emergency.

66.     Stuart Fire Rescue typically conducted its training sessions in the open space behind its headquarters, located at 800 SE M.L.K. Jr. Blvd., Stuart, FL 34994.

67.     Indeed, Stuart Fire Rescue conducted training exercises in or around the property at 800 SE M.L.K. Jr. Blvd. for decades using AFFF manufactured by Defendants.

68.     Instructions and warning labels affixed to the AFFF containers by the Defendants did not adequately describe the scope of danger associated with storage, use, clean up, and disposal of AFFF, or the procedures necessary for the safe storage, use, clean up, and disposal of AFFF.

69.     Defendants were aware of the health risks associated with use, disposal and bioaccumulation of AFFF components, but did not warn the users of the AFFF, including City of Stuart and Stuart Fire Rescue.

70.     Defendants were aware of the health risks of introducing AFFF into the environment, but did not warn the users of the AFFF, including the City of Stuart and Stuart Fire Rescue.

71.     At no time during the relevant period did the Defendants warn Stuart Fire Rescue that the ingredients in the AFFF were persistent, bioaccumulative, and toxic, or that, once introduced into the environment, its chemical components would readily mix with ground water,

contaminate the aquifer located beneath Stuart, thereby contaminating the Stuart drinking water and exposing thousands of innocent residents to water contaminated with dangerous chemicals.

72.     In 2002, 3M ceased production of AFFF manufactured with PFOS due to health and environmental concerns.

73.     3M and the other defendants had known of these dangers for years.

74.     Even though 3M ceased production of PFOS-based AFFF in 2002, neither 3M nor any other Defendant that used manufactured, sold, distributed and/or redistributed a Toxic Surfactant-based AFFF recalled its dangerous products or warn users of AFFF of its toxic danger, including City of Stuart and Stuart Fire Rescue.

75.     To the contrary, the other Defendants willingly stepped-in to fill the void left when 3M exited the market.

**<u>Plaintiff's Discovery of Toxic Chemicals in Their Drinking Water.</u>**

76.     Prior to 2012, municipal water providers, such as the City of Stuart, were not required to test their drinking water for the presence of PFOS or PFOA, and tests for PFOS and PFOA were rare.

77.     In 2012, the EPA included PFOS and PFOA in its Third Unregulated Contaminant Monitoring Rule ("UCMR3"), which thereby required certain water providers across the country, including the City of Stuart, to test their water for the presence of PFOS and PFOA at the point of entry to the water distribution system.

78.     Plaintiff first learned of the presence of PFOS and PFOA in its water in May 2016 when the Florida Department of Environmental Protection informed the City that the test results taken in response to the "UCMR3" exceeded the Water Health Advisory that the EPA had

identified at 70 parts per trillion as recorded at the City's point of entry to the water distribution system.

79.     Those tests showed the presence of PFOS and PFOA above the 2016 Health Advisory Levels at the point of entry to the water distribution system.

80.     Upon finding PFOS and PFOA at the point of entry to the water distribution system, Plaintiff subsequently tested its individual wells.

81.     Plaintiff thereafter learned that several of its wells, especially those in the vicinity of its Fire Rescue Station, had high levels of PFOS and PFOA.  Plaintiff immediately took those wells out of production.

82.     In addition, Plaintiff also learned that nearly all of its wells had some level of PFOS and/or PFOA.

83.     Plaintiff has since determined that the source of the contamination is the use of AFFF at the Stuart Fire Rescue property.

84.     As set forth herein, Defendants knowingly manufactured, sold, and distributed a dangerous and defective product, failed to provide proper warnings, and failed to recall their products when they took them off the market.

### V. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**Defective Product – Strict Liability Failure to Warn**

85.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-84 of this Complaint as if they were set forth at length herein.

86.     At all times relevant, Defendants were in the business of, among other things, manufacturing, selling, or otherwise distributing AFFF.

87.     At all times relevant to this litigation, Defendants' AFFF reached its intended consumers and users without substantial change in its condition as designed, manufactured, sold, distributed, labeled and marketed by Defendants.

88.     As manufacturers, sellers, or distributors of a commercial product, the Defendants had a duty to warn of the foreseeable risks associated with the reasonably foreseeable uses of their products.

89.     As manufacturers, sellers, or distributors of a commercial product, the Defendants had a duty to provide reasonable instructions on the proper and safe use, storage and disposal of their AFFF.

90.     Defendants, as manufacturers, sellers, and distributors of AFFF placed into the stream of commerce, are deemed experts with respect to their product.

91.     The generally recognized and prevailing best scientific and medical knowledge at all times relevant demonstrated that the Toxic Surfactants in Defendants' AFFF could contaminate groundwater and local drinking water supplies with toxic and carcinogenic chemicals.

92.     The generally recognized and prevailing best scientific and medical knowledge at all times relevant demonstrated that the Toxic Surfactants in Defendants' AFFF had the capacity to enter the water supply, to persist there for decades, and to cause harm to human health and the environment.

93.     The Defendants failed to provide warnings of the reasonably foreseeable risk that use of Defendants' AFFF could result in the contamination of groundwater and, ultimately, drinking water supplies.

94.    Defendants knew or should have known that the minimal warnings disseminated with their AFFF were inadequate.

95.    Adequate instructions and warnings would have reduced or avoided the foreseeable risks of harm posed by Defendants' AFFF.

96.    Had Defendants provided adequate instructions and warnings, the contamination of the groundwater and drinking water supply with toxic and carcinogenic chemicals would have been reduced or eliminated.

97.    Defendants' failure to provide adequate warnings and instructions renders Defendants' AFFF unreasonably dangerous and defective products.

98.    Plaintiff could not have reasonably discovered the defects and risks associated with use of Defendants' AFFF.

99.    As a result of Defendants' manufacture, sale, or distribution of a defective product, Defendants are strictly liable in damages to the Plaintiff.

100.    As a direct and proximate result of Defendants' failure to warn against the likelihood of contamination from their AFFF, the groundwater and drinking water in and around the City of Stuart became contaminated with PFOS and PFOA.

101.    As a direct and proximate result of Defendants' failure to warn of the potential for groundwater and drinking water contamination, the City of Stuart has had to remove some of its wells from service, expend significant sums to investigate the source and extent of the contamination, and expend significant sums to plan for treatment of its water to make it safe.

102.    As a direct and proximate result of Defendants' failure to warn of the potential for groundwater and drinking water contamination, the City of Stuart will incur additional costs for the construction of a water treatment facility capable of removing PFOS and PFOA from its

water supply, and additional costs in the future for the operation and maintenance of that water treatment facility.

103.    Defendants' distribution of their defective products, despite their knowledge of the defects, including the increased risks of widespread contamination of the groundwater, surface water, and drinking water supplies with toxic and carcinogenic chemicals and the risks to the unsuspecting residents in surrounding areas was so reckless or wanting in care that it constituted a conscious disregard and/or indifference to the life, safety, or rights of the Plaintiff and the residents and businesses who rely on the drinking water that Plaintiff provides.

104.    Defendants' conduct was so reckless or wanting in care that it constituted intentional or grossly negligent conduct.

105.    Defendants' contamination of the public water supply constituted a public wrong.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor for compensatory and punitive damages, together with prejudgment interest, costs herein incurred, attorneys' fees, and all such other and further relief that this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### Negligent Failure to Warn

106.    A product is defective when the foreseeable risks of harm from the product could have been reduced or avoided by providing reasonable instructions or warnings, and the failure to provide those instructions or warnings makes the product unreasonably dangerous.

107.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-84 of this Complaint as if they were set forth at length herein.

108.    At all times relevant, Defendants were in the business of, among other things, manufacturing, selling, or otherwise distributing AFFF.

109.    At all times relevant to this litigation, Defendants' AFFF reached its intended consumers and users without substantial change in its condition as designed, manufactured, sold, distributed, labeled and marketed by Defendants.

110.    As manufacturers, sellers, or distributors of a commercial product, the Defendants had a duty to warn of the foreseeable risks associated with the reasonably foreseeable uses of their products.

111.    As manufacturers, sellers, or distributors of a commercial product, the Defendants had a duty to provide reasonable instructions on the proper and safe use, storage and disposal of their AFFF.

112.    Defendants, as manufacturers, sellers, and distributors of AFFF placed into the stream of commerce, are deemed experts with respect to their product.

113.    Defendants knew or should have known that the Toxic Surfactants contained in their AFFF could contaminate groundwater and local drinking water supplies with toxic and carcinogenic chemicals.

114.    Defendants knew or should have known that the foreseeable storage, use and disposal of the AFFF that they manufactured, sold, and distributed had the capacity to enter the water supply, to persist there for decades, and to cause harm to human health and the environment.

115.    The Defendants failed to provide warnings of the reasonably foreseeable risk that use of Defendants' AFFF could result in the contamination of groundwater and, ultimately, drinking water supplies.

116.    Defendants knew or should have known that the minimal warnings disseminated with their AFFF were inadequate.

117.    Adequate instructions and warnings would have reduced or avoided the foreseeable risks of harm posed by Defendants' AFFF.

118.    Had Defendants provided adequate instructions and warnings, the contamination of the groundwater and drinking water supply with toxic and carcinogenic chemicals would have been reduced or eliminated.

119.    Defendants' failure to provide adequate warnings and instructions renders Defendants' AFFF an unreasonably dangerous and defective product.

120.    Plaintiff could not have reasonably discovered the defects and risks associated with AFFF use.

121.    As a result of Defendants' manufacture, sale, or distribution of a defective product, Defendants are liable in damages to the Plaintiff.

122.    As a direct and proximate result of Defendants' failure to warn against the likelihood of contamination from their AFFF, the groundwater and drinking water in and around the City of Stuart was contaminated with PFOS and PFOA.

123.    As a direct and proximate result of Defendants' failure to warn of the potential for groundwater and drinking water contamination, the City of Stuart has had to remove some of its wells from service, expend significant sums to investigate the source and extent of the contamination, and expend significant sums to plan for treatment of its water to make is safe.

124.    As a direct and proximate result of Defendants' failure to warn of the potential for groundwater and drinking water contamination, the City of Stuart will incur additional costs for the construction of a water treatment facility capable of removing PFOS and PFOA from its

water supply, and additional costs in the future for the operation and maintenance of that water treatment facility.

125.    Defendants' distribution of their defective products, despite their knowledge of the defects, including the increased risks of widespread contamination of the groundwater, surface water, and drinking water supplies with toxic and carcinogenic chemicals and the risks to the unsuspecting residents in surrounding areas was so reckless or wanting in care that it constituted a conscious disregard and/or indifference to the life, safety, or rights of Plaintiff City of Stuart and the residents and businesses who rely on the drinking water that Plaintiff provides.

126.    Defendants' conduct was so reckless or wanting in care that it constituted intentional or grossly negligent conduct.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor for compensatory and punitive damages, together with prejudgment interest, costs herein incurred, attorneys' fees, and all such other and further relief that this Court deems just and proper.

## THIRD CLAIM FOR RELIEF

### Defective Product - Design Defect

127.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-84 of this Complaint as if they were set forth at length herein.

128.    At all times relevant, Defendants were in the business of, among other things, manufacturing, selling, or otherwise distributing AFFF.

129.    As manufacturers, sellers, or distributors, Defendants had a duty to make and/or market AFFF that was free from a defective condition unreasonably dangerous to persons that foreseeably would come into contact with it.

130.    Defendants breached that duty because the AFFF that they manufactured, sold or distributed was dangerous to an extent beyond that contemplated by an ordinary consumer when used in its intended and reasonably foreseeable manner.

131.    Defendants, as manufacturers, sellers, and distributors of AFFF placed into the stream of commerce, are deemed experts with respect to their product.

132.    Defendants knew or should have known that the Toxic Surfactants contained in their AFFF were toxic and carcinogenic and could lead those exposed to those toxic chemicals and/or their breakdown products to develop serious medical conditions.

133.    Defendants knew or should have known that the foreseeable storage, use and disposal of the AFFF that they manufactured, sold, and distributed had the capacity to enter the water supply, to persist there for decades, and to cause harm to human health and the environment.

134.    Defendants knew or should have known that the foreseeable storage, use and disposal of the AFFF that they manufactured, sold, and distributed would require those who used groundwater in the vicinity of AFFF, including Plaintiff, to design, install, operate and maintain costly filtration devices to make the water safe for human use and consumption.

135.    The risks of AFFF were not obvious to Plaintiff.

136.    Plaintiff could not have reasonably discovered the defects and risks associated with AFFF use.

137.    Defendants' AFFF was far more dangerous than an ordinary consumer would expect when used, as designed, in its intended or reasonably foreseeable manner.

138.    Defendants' AFFF was, therefore, unreasonably dangerous.

139.    Defendants' AFFF was, therefore, defective.

140.     As a result of Defendants' manufacture, sale, or distribution of a defective product, Defendants are strictly liable in damages to the Plaintiff.

141.     As a direct and proximate result of Defendants' manufacture, sale, or distribution of a defective product, the City of Stuart has had to remove some of its wells from service, expend significant sums to investigate the source and extent of the contamination, and expend significant sums to plan for treatment of its water to make is safe for human use and consumption.

142.     As a direct and proximate result of Defendants' failure to warn of the potential for groundwater and drinking water contamination, the City of Stuart will incur additional costs for the construction of a water treatment facility capable of removing PFOS and PFOA from its water supply, and additional costs in the future to operate and maintain that water treatment facility.

143.     Defendants' distribution of their defective products, despite their knowledge of the defects, including the increased risks of widespread contamination of the groundwater, surface water, and drinking water supplies with toxic and carcinogenic chemicals and the risks to the unsuspecting residents in surrounding areas was so reckless or wanting in care that it constituted a conscious disregard and/or indifference to the life, safety, or rights of the Plaintiff and the residents and businesses who rely on the drinking water that Plaintiff provides.

144.     Defendants' conduct was so reckless or wanting in care that it constituted intentional or grossly negligent conduct.

145.     Defendants' contamination of the public water supply constituted a public wrong.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor for compensatory and punitive damages, together with prejudgment interest, costs herein

incurred, attorneys' fees, and all such other and further relief that this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

### Negligence

146.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-84 of this Complaint as if they were set forth at length herein.

147.    The Defendants had a duty to manufacture, market, and sell their AFFF in a manner that avoided harm to those who foreseeably would come into contact with it.

148.    Defendants knew or should have known that the manufacture of AFFF containing Toxic Surfactants was hazardous to human health and the environment.

149.    Defendants further knew or should have known that it was unsafe and/or unreasonably dangerous to manufacture AFFF using Toxic Surfactants because it was a near certainty that the chemicals would migrate from the locations where it is used and contaminate the ground water and drinking water supply in the surrounding areas.

150.    Defendants knew or should have known that the Toxic Surfactants used in the manufacture of their AFFF do not degrade, remain in the environment for decades, and bioaccumulate, thereby creating a potential health risk that could last for many years.

151.    Plaintiff was a foreseeable victim of the harm caused by Defendants' AFFF.

152.    As a result of Defendants' breach of their legal duties, the drinking water wells on which Plaintiff relies to provide potable water to its customers became contaminated with unsafe levels of PFOS and PFOA.

153.    Plaintiff will continue to suffer damages and expenses in the future.

154.     Defendants' manufacture, marketing, and sale of AFFF, despite their knowledge of the risks of widespread contamination of the groundwater and drinking water supplies with toxic and carcinogenic chemicals, including Plaintiff's, among other reasons, demonstrates that Defendants' conduct was willful, wanton or reckless, and undertaken with a reckless indifference to the rights of Plaintiff.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor for compensatory and punitive damages, together with prejudgment interest, costs herein incurred, attorneys' fees, and all such other and further relief that this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

### Private Nuisance

155.     Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1-84 of this Complaint as if they were set forth at length herein.

156.     Defendants' wrongful conduct resulted in the interference with Plaintiff's usufructuary right to the use of groundwater for providing potable water to its customers through the invasion of hazardous and toxic substances into the Plaintiff's wells.

157.     The Defendants are liable for a nuisance because their conduct was the legal cause of an invasion of the Plaintiff's interest in the use of groundwater, and the invasion was intentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct.

158.     Defendants' negligent, reckless and wanton acts proximately caused Plaintiff's property damage.

159.     As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has suffered damages including, but not limited to, the following: (1) loss of the beneficial use of its groundwater for serving water to its customers; and (2) past and/or future costs for appropriate testing to determine contamination and remediation.

160.     Defendants' manufacture, marketing, and sale of AFFF, despite their knowledge of the risks of widespread contamination of the groundwater and drinking water wells with toxic and carcinogenic chemicals, including Plaintiff's, among other reasons, demonstrates that Defendants' conduct was willful, wanton or reckless, and undertaken with a reckless indifference to the rights of Plaintiff.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor for compensatory and punitive damages, together with prejudgment interest, costs herein incurred, attorneys' fees, and all such other and further relief that this Court deems just and proper.

## VI. DAMAGES

161.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

162.     Plaintiff seeks monetary damages for each violation of the First through Fifth Claims for Relief.  In particular, Plaintiff seeks monetary damages:

  a. to compensate Plaintiff for the increased costs to obtain drinking water, including the costs of alternative drinking water sources and/or the installation and maintenance of an adequate filtration system;

    b.   for such other monetary damages as are required to fully compensate Plaintiff for the losses they have and will continue to suffer as a result of Defendants' conduct;

    c.   for delay damages, including pre-judgment and post-judgment interest according to law; and

    d.   Plaintiff seeks punitive damages in an amount sufficient to deter Defendants' similar wrongful conduct in the future.

## VII. PRAYER FOR RELIEF

Plaintiff City of Stuart seeks judgment against all Defendants for:

1.    Compensatory damages arising from PFOA and PFOS contamination of groundwater and drinking water supply wells, including but not limited to:

    (i)    costs of investigation of contamination;

    (ii)    costs of testing and monitoring;

    (iii)    costs of providing water from an alternate source;

    (iv)    costs of installing and maintaining a wellhead treatment and adequate filtration system;

    (v)    costs of installing and maintaining a wellhead protection program;

    (vi)    costs of installing and maintaining an early warning system to detect PFOA and/or PFOS before it reaches wells;

    (vii)    any other response costs or other expenditures incurred to address PFOA and/or PFOS contamination; and

    (viii)    interest on the damages according to law;

2.      Punitive damages in an amount sufficient to deter Defendants' similar wrongful conduct in the future;

3.      Costs (including reasonable attorney fees, court costs, and other expenses of litigation);

4.      Prejudgment interest; and

5.      Any other and further relief as the Court deems just, proper, and equitable.

## VIII. JURY TRIAL DEMANDED

Plaintiff City of Stuart demands a trial by jury as to all issues and defenses.

Respectfully Submitted,

Dated: October 18, 2018

    __/s/ Frank Petosa_____
Frank M. Petosa
FL Bar No. 972754
**MORGAN & MORGAN, P.A.**
fpetosa@forthepeople.com
600 N. Pine Island Road, Suite 400
Plantation, FL 33324
Telephone: (954) 318-0268
Facsimile: (954) 327-3018


**WEITZ & LUXENBERG, P.C.**
Robin L. Greenwald
(pro hac vice anticipated)
rgreenwald@weitzlux.com
700 Broadway
New York, NY 10003
Tel.: 212-558-5500
Fax: 212-344-5461

Attorneys for Plaintiff